**RECEIVED**
IN MONROE, LA.

JUN 0 8 2022
$\mathcal{A}\mathcal{M}$
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATE DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

RUIZHU (RACHEL) DAI,

                                    Plaintiff,

v.

*3:22cv1551*

CIVIL CASE NO.:

JUDGE:

MAG. JUDGE:

**JURY TRIAL DEMANDED**

**SON LE**, Coordinator of DBA in Management,
**KIRK RING**, Chairman of Management
Department, **WILLIAM MCCUMBER**,
Associate Dean for Graduate Programs,
**CHRISTOPHER MARTIN**, Dean, College of
Business, **TERRY MCCONATHY**, Provost,
and **LES GUICE**, President, Louisiana Tech
University, all individually and in their official
capacities,

                                    Defendants.

## CIVIL COMPLAINT

### PLAINTIFF

1. The plaintiff in this case is Ruizhu (Rachel) Dai, a former doctoral student in
the College of Business, Louisiana Tech University (LaTech), and whose mailing
address is *6 Black Oak Dr, Hattiesburg, MS 39402*.

### DEFENDANTS

2. Defendants Son Le (Coordinator), Kirk Ring (Chair), William McCumber
(Associate Dean), Christopher Martin (Dean) (<ins>Physical address for prior 4</ins>: *College of*

1

*Business, 504 W. Texas Ave*), Terry McConathy (Provost), and Les Guice (President) (Physical address for immediate prior 2: *Wyly Tower, 1310 W. Railroad Ave*) are and were at all times relevant to this Complaint, members of Louisiana Tech University, Ruston, LA 71272.

## JURISDICTION & VENUE

3. This is a civil rights action that raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983, 1985, 2000c–8, 2000c–9, 2000h–1, and various case laws.

4. This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331, 1332, and 1343, and supplemental jurisdiction over state claims under 28 U.S.C. § 1367, because this case involves federal questions about civil rights, because the parties are citizens of different states and the dispute concerns more than $75,000, and because a state employment contract is involved.

5. This Court can award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201–02; the requested injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs under 42 U.S.C. § 1988.

6. Venue is proper in this District and this Division under 28 U.S.C. § 1391(b) because Defendants reside in this district and because all the acts described in this Complaint occurred in this District and this Division.

## FACTUAL BACKGROUND

7. **I had been successful in my doctoral study before the incident** detailed below: finished all my coursework, passed the comprehensive examinations, entered doctoral candidacy,

needed only to finish my doctoral dissertation to get my doctoral degree.

8. Here is a **brief summary** of the ordeal for me so far. I presented my summer term paper for MGMT 604 on <u>Oct. 1, 2021</u> and defended the research method used in it, when criticized by Defendant Le (DBA coordinator). Defendant Ring (Chair & course coordinator) called me an **"idiot"** at the end. I wrote an email on <u>Oct. 4</u> to further clarify my position, as per Defendant Ring's instruction in an email dated Sept. 9. Defendant Ring **asked** (by email on <u>Oct. 4</u>) to meet with me in person **about my email** (, which he **said** on Oct. 18 put them to shame, obviously because I proved them wrong); I declined, citing his insult to me. Then, all hell broke loose. The gang of three administrators (Defendants Le, Ring, and McCumber, Assoc. Dean for graduate programs) acted recklessly and ruthlessly: 1) **terminated my GA** (by Defendant McCumber on <u>Oct. 18</u>) in a meeting ordered by Defendant McCumber (with **threat** to dismiss me from the doctoral program if I do not attend), 2) **cut my dissertation committee formation time** from six (6) to two (2) months (by Defendant McCumber on <u>Oct. 18</u>), and 3) **lowered my grade** for MGMT 604 from B to C (by Defendant Ring on <u>Oct. 21</u>). All these are classical **retaliations** against my right of free speech protected by the First Amendment and *LaTech Policy 1311* (re. free speech on campus), pursuant to *LaTech Policy 1441* (re. retaliation)[1], as detailed point by point later. I appealed all the way to the President (Defendant Guice), but to no avail.

9. As a result of their ruthless **retaliations** and their relentless **naming and shaming** of me in public and supposedly in private, my **academic career has been abruptly terminated**, as detailed later.

## ALLEGATIONS OF LAW

### I. College Students and Their First Amendment Rights

---

[1] Here is the URL for all LaTech polices: https://www.latech.edu/administration/policies/.

10. The Supreme Court has "long recognized that, given the important purpose of public education and the expansive freedoms of speech and thought associated with the university environment, universities occupy a special niche in our constitutional tradition." *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003). "The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). "The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010).

11. The First Amendment's importance is at its apex at our nation's colleges and universities. "The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools [of higher education]. The college classroom with its surrounding environs is peculiarly the 'marketplace of ideas.'" *Healy v. James,* 408 U.S. 169, 180 (1972) (quoting *Shelton v. Tucker*, 364 U.S. 479, 487 (1960)). The core principles of the First Amendment "acquire a special significance in the university setting, where the free and unfettered interplay of competing views is essential to the institution's educational mission." *Doe v. Univ. of Mich.*, 721 F. Supp. 852, 863 (E.D. Mich. 1989) (citing *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967)). "Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die." *Sweezy v. N.H. ex rel. Wyman*, 354 U.S. 234, 250 (1957).

12. In theory, "[t]he college campus is peculiarly suited to serve as a marketplace of ideas and a forum for the robust exchange of different viewpoints." *Solid Rock Found. v. Ohio State Univ.*, 478 F. Supp. 96, 102 (S.D. Ohio 1979). The First Amendment's protections, moreover,

are "not confined to the supervised and ordained discussion which takes place in the classroom" but extend throughout a university's campus. *Solid Rock Found.*, 478 F. Supp. at 102.

13. Put simply, "First Amendment protections [do not] apply with less force on college campuses than in the community at large." *Healy*, 408 U.S. at 180. "The mere dissemination of ideas - no matter how offensive to good taste - on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 670 (1973). Indeed, "the point of all speech protection is … to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 574 (1995). These principles apply with more force "[i]n our current national condition," not less. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 339 (5th Cir. 2020).

14. The University is aware of the free speech right on campus, as evidenced by *LaTech Policy 1311* (Exhibit P01-01), which proclaims that "[i]t is *not the proper role of the University to shield individuals from speech protected by the First Amendment* of the Constitution of the United States of America and Article I, Section 7, of the Constitution of Louisiana, and other applicable laws, *including, without limitation, ideas and opinions they find unwelcome, disagreeable, or even deeply offensive.*" (emphasis added)

**II. Plaintiff's Exercise of First Amendment Right**

15. This ordeal for me began on Oct. 1, 2021 when I presented my 2021 summer research paper, which is about the *Insurance Effect of Corporate Social Responsibility (CSR) in the Case of Accounting Scandals* (see Exhibit P02-01). Defendant Le raised an issue about the methodology used in my paper, claiming that I used the **wrong** method to do the so-called "moderation effect" and should use his "moderation effect" method. I defended my paper by

saying that I am following the same methodology used by several articles published in the top management journals (e.g., *Academy of Management Journal*, *Strategic Management Journal*)[2], as cited in my paper (highlighted in "References" Exhibit P02-21~24). Then, Defendant Le got upset by saying to the effect that "*I don't care about SMJ (the Shiu and Yang 2017 SMJ paper I followed more specifically)*" and "*I need to check if the other papers also used the same methodology.*" He even said that "*Are they superstars?*". Well, I was shocked to hear him say that, because he is the doctoral coordinator and self-claimed expert on CSR, but he is obviously **not familiar** with the literature. If we can not even follow papers published in top journals in the area, what should we follow and how can we learn? After all, we are here being trained as future teacher-scholars. Then Defendant Ring chimed in, saying to the effect that "*Professors sacrificed their free time to listen to your presentations and offer suggestions to you, you don't appreciate but argue with professors, you are like an idiot.*" Essentially, he was calling me an "idiot" in front of all the professors and students in presence, because I was the only one defending and rebutting seriously. I feel so humiliated and depressed as not to be able to say more during the presentation, as a human being with dignity.

16. So, after the presentation and having collected myself, on Monday, October 4, 2021, I wrote an email to Defendants Le and Ring (see Exhibit P03-01) to further clarify my position, citing more top journal articles, showing them that what I used is a *better and more popular* method to do the so-called "moderation effect". I copied all the professors and students present during my presentation, simply as *a continuation of my presentation & defense*, because almost all professors chimed in to support Defendant Le and all were there when I was effectively called

---

[2] A paper published in the *Accounting Review* (a top accounting journal) in March 2021, sent to me by Defendant McCumber to kill my idea, as suggested by his later actions, also used the same methodology.

an "idiot".[3] As for their claim that I argued, it's just not worth rebutting. If we do not argue, how can we defend ourselves? Why is it called a "defense"? Should we take things lying down in a country idolizing the "freedom of speech" inscribed in the *First Amendment of the Constitution*? I do not think so. Actually, I'm here arguing in the court of law.

17. LaTech Policy 1311 (re. free speech, as in Exhibit P01-01) stats that

"Louisiana Tech University unequivocally supports and endorses free speech and free expression among its students, faculty, and staff. ... Students and faculty have the freedom to discuss any topic that presents itself, ..., *in a manner* which *does not materially and substantially disrupt the functioning* of the University and *within the limits on time, place, and manner of expression* stated herein." (emphasis added)

18. Obviously, what I did above is protected free speech, which was delivered in the right time, place, and manner of expression, not in any way disrupting the functioning of the University. *I did not emphasize the insult of being called an "idiot" in public, I did not copy anybody not present in the presentation, and I did not use any abusive language.* It is just a routine academic debate, which is supposed to be encouraged in higher education, conducted in a routine manner. But, my free speech right protected by the First Amendment and the campus policy has been blatantly violated through a campaign of abrupt, reckless, and ruthless retaliations, *the worst form of discriminations*, by the defendants (Son Le, Kirk Ring, and William McCumber), supposedly role models, to **kill my student career** ASAP, as described in the following.

### III. Defendants' Abrupt, Reckless, & Ruthless Retaliations

19. First, on Mon, <u>Oct 4, 2021</u>, I received an email from Defendant Ring, asking me to meet in person about my 'hot' email above, and I declined, citing their *humiliating behaviors* during my presentation, but said to the effect that "I am happy to get whatever advice you have

---

[3] Actually, I did this mainly owing to the instruction in Defendant Ring's email (see Exhibit P03-02) that "*Follow up with faculty who ask you questions if clarification is warranted.*" Of course, I was also trying to prove that I am NOT such an "idiot" as he claimed in public, in violations of *LaTech Policy 1311* (free speech).

for me, by email." (see Exhibit P04) During the pandemic (with about 2000 deaths on a daily basis in this country around the time, and Louisiana among top 5 in death rate),[4] it is a lot safer and more *rational* to discuss things, esp. academic points, by email. If they can defend their position, why don't they rebut me in writing in front of everybody, as they did during my presentation? If Defendant Ring did not call me an "idiot", why not deny it or rebut me in writing? They did not rebut my defense of my methodology and Defendant Ring did not deny that he called me an "idiot" in writing, because they could not.[5] But, they are out for blood, with Defendant McCumber leading the charge vicariously, being NEW to his job and *gung ho* about it.

20. Defendant McCumber sent me an email on <u>Oct 13, 2021</u> (see Exhibit P05), calling an in-person meeting on October 18, 2021, **intimidating** that I would be dismissed from the doctoral program if I do not show up in person. I agreed *under enormous pressure* (see Exhibit P05). During the meeting on <u>October 18, 2021</u>, I was bombarded in turn by Defendants Le, Ring, and McCumber, *falsely* accusing me of not sitting in my assigned space in the hallway all the time for my GA job and of not doing my GA job satisfactorily **quarters prior** to this. Related to this, on Oct 8, 2021, Defendant McCumber sent an email to ALL the GA's (see Exhibit P06), narrating about the same "in-person experience" issue, meaning that it is a **common** issue, but they decided to pick on me to **retaliate**. This is an **obvious attempt to retaliate** against the "hot" email I wrote to clarify my academic position, because the "in-person experience" issue is a **common** issue during this pandemic and because of the **timing** of the claims that I did not do my

---

[4] *https://www.worldometers.info/coronavirus/country/us/*
[5] Defendant Ring did deny that he called me an "idiot", when confronted during the meeting on Oct. 18, 2021, saying that his students could testify. While he did not directly call me an "idiot", he did that effectively. On the other hand, knowing what they have done to me, as is an open secret in the college, who dares to tell the truth? Actually, every doctoral student is scared, because they were teaching us how to "behave" in class, using me as an example in one way or another, *poisoning* the atmosphere for me in the College, in violation of *LaTech Policy 1438 (harassment)*. Essentially, they've already tampered with the witnesses publicly.

GA job to the satisfaction of two of my former GA professors. Given that it is a common issue, **why single ME out**? The so-called complaints were made **quarters ago**, true or false, **why pick on me NOW**, **right after** my "hot" email, while having already assigned me GA work since quarters ago? I expressed my objection on the spot during the meeting, they said "we just talk about your situation today." This is obviously **discriminatory** and totally **unreasonable** and **shocking** because these are professors, supposedly rational thinkers and role models. Regardless of what I said (oftentimes **rudely cut short and trashed** ),[6] and regardless of if the claims are true, Defendant McCumber declared that **my GA position was terminated immediately**, and I would receive an email from him to that effect (not received yet, as of the writing time). But the claims are NOT true, as described below.

21. Unlike they claimed, I did show up in my workstation in the hallway from time to time, while not there all the time, because of the pandemic and the very fact that it is **NOT an office**, but just a deck and chair in the hallway. I'm not a receptionist, but a doctoral student doing independent thinking about my coursework and research, which requires a serene environment. Like most people, I can not do my academic work in the hustle and bustle of the hallway. More importantly, while not showing up to my assigned workstation in the hallway all the time, **I did do my assigned GA job, which is how I learn and why I get paid for**. Actually, sometimes I had to leave the workstation to perform some GA tasks for a prolonged time period (e.g., proctoring exams, copying papers, printing papers, etc.).  By the way, all the students assigned to the hallway are **non-native** speakers, seemingly a **systematic discrimination** by Defendant McCumber's office.

22. Defendant Le claimed that I refused to work for him **four quarters** ago, presenting

---

[6] Saying, e.g., I'm there to waste their time and money, because I did not take their opinions unconditionally at face value.

emails (see Exhibit P07). But, he **intentionally distorted** the actual situation. As detailed in the emails, I did not refuse to work for him on a regular basis, but did decline to work for him in a **concentrated** manner, finishing a whole quarter's work in two weeks, which is **abusive** and totally **unreasonable**. After all, I am a full-time student and I have a family, NOT anybody's slave. I need to finish my academic work before the deadlines and I need to spend a reasonable amount of time with my family, esp. my then six-year-old son, like everybody (mostly *online* via Skype during weekdays in my apartment in Ruston, while driving back home occasionally on weekends). He did not assign me the 10 hours on a weekly basis, and now wanted me to make it all up in two weeks for the whole quarter, forcing me to skip my academic work and my family time. That is for a slave. I am NOT. Now, he uses his distorted claim to **retaliate** against my defending my academic position and to settle the old score.

23. Also, they cited Dr. Watson's complaint that I did not do check-in on a weekly basis at the beginning and my work was not satisfactory. This is the first time I heard that he was not satisfied with my work. I believe Defendant Le should have let me know earlier so that I could have done better. As for the weekly check-in, Dr. Watson did not tell me I needed to do that at the beginning, and not every professor requires that. But, I did write him an email at the beginning to the effect that whenever he needs my help, please kindly let me know. When he told me that I need to do the weekly thing, I complied by emailing him every Monday. So, it is just a matter of personal style, which I did not know when I worked for him the first time. *Surprisingly, I have been assigned to Dr. Watson again in the current Fall quarter, despite the complaints.* I just wonder **why they did not share with me the complaints earlier**, but NOW, right after my "hot" email. Obviously, it is for **retaliation**, as evidenced by the **timing** of the termination detailed below.

24. It is worth noting that they **terminated** my GA **in the middle** of the term, **AFTER they had already assigned me GA work** for both the Fall Quarter (working for Drs. Walters and Watson, e.g., I proctored an exam on October 6 for Dr. Walters) and the forthcoming Winter Quarter (teaching MGMT 485, for which I'd already ordered a textbook from Pearson, as per Defendant Ring's instruction), as evidenced by the attached emails from Defendants Le and Ring (See Exhibit P08-3~4), and **right AFTER** I sent them the email on Oct. 4 to clarify my academic points. This is important for two reasons: 1) the fact that **they had already assigned me GA work** for both the Fall and Winter Quarters proves that the so-called "in residence" issue and "dissatisfactions" regarding my GA work quarters ago, as detailed above, are NOT the real reason, but a far-fetched excuse;[7] 2) the fact that they terminated my GA **right after** my Oct. 4 email (See Exhibit P08-5~7) proves that the email is the real reason, because Defendant Ring said during the Oct. 18 meeting that my email proved them wrong and, thus, **put them to shame**, even though that's never my intention. So, it is abundantly clear that they have **abused** their administrative power to **retaliate** against my academic freedom and my freedom of expression protected by the First Amendment of the U.S. Constitution.

25. *LaTech Policy 1441* (re. *Retaliation*, as in Exhibit P09) states clearly:

"*Retaliation ... is a violation of ...* policy and is *strictly prohibited.*" "**Protected activity** covers a wide spectrum of conduct. Generally, this involves taking some action that is *permitted or protected by state and/or federal laws.*" (Policy 1441.2.2, Exhibit P09-02) "The most obvious **types of retaliation** are ... refusal to hire, denial of job benefits, demotion, suspension, and *termination.* Other actions include *threats, reprimands, negative evaluations, ... unjustified*

---

[7] Actually, the fact that they did not terminate my GA quarters ago proves that the so-called "in residence" issue and distorted "dissatisfactions", even if all true, was NOT serious enough for termination. If not then, **why NOW in the middle of the term & right after the email? For retaliation** against my academic freedom and my freedom of speech, as per *LaTech Policy 1441.*

*evaluations or reports, acceleration of disciplinary action, sudden enforcement of previously unenforced policies, …, or other harassing or hostile behavior or attitudes…*" (Policy 1441.3.1, Exhibit P09-03)

26. Here in this case, my **freedom of speech** is protected by the First Amendment of the U.S. Constitution and LaTech Policy 1311. Their **termination of my GA** in the middle of the term **shortly after** (LaTech Policy 1441.4.1.2, Exhibit P09-03) I sent the "hot" email (LaTech Policy 1441.4.1.1, Exhibit P09-03)[8] fits exactly into "*acceleration of disciplinary action, sudden enforcement of previously unenforced policies*" (LaTech Policy 1441.3.1, Exhibit P09-03), despite their false accusations rebutted above, classical **retaliation**. No doubt, **retaliations** in this case also include *intimidation* by Defendant McCumber in his email of Oct 13, 2021, the *harassing & trashing* by the three during the meeting on Oct. 18, 2021 [LaTech Policies 1438 (harassment)], *cutting short* my dissertation committee formation time (LaTech Policy 1441.4.1.4, Exhibit P09-04), and the *unjustified evaluation* of my presentation on Oct. 1, 2021 by Defendant Ring (LaTech Policy 1441.4.1.3, Exhibit P09-04), as detailed later.

27. Instead of the promised email to terminate my GA position, I was shocked to receive the email from Defendant McCumber with a so-called "continuation offer letter" on October 18, 2021 (see Exhibit P10), offering me TWO (2) months to form my dissertation committee since admission to candidacy (see Exhibit P11). This is totally **discriminatory** and unfair, in an apparent attempt **to kill my student career**, telling me that "*we will see who is willing to serve on your committee, with all three professors in strategic management unwilling to serve*" during the meeting on October 18, 2021 (an obvious **intimidation**). But he forgot that Ms. Speaks in his

---

[8] Defendant Ring stated in his email to me on Oct. 4, 2021 (see Exhibit P04) that they (Le, Ring, McCumber) wanted to talk to me about the "hot" email. Likewise, Defendant Ring said during the Oct. 18 meeting that my "hot" email proved them wrong and, thus, **put them to shame**, even though that's never my intention. These are *direct* evidence for retaliation, pursuant to *LaTech Policy 1441.4.1.1*.

office sent an email on Oct 15, 2021 (see Exhibit P12) to all doctoral candidates, telling us we all have SIX (6) months to form our committee. Why do I have only TWO (2) months while everybody else has SIX (6) months? Reckless **abuse** of power and clear **discrimination**, intended to **kill my student career** here ASAP, under the **hypocritical pretext** of helping me to succeed.[9] I responded to him on the same day by email (see Exhibit P13), informing that I should not and could not accept his discriminatory offer and that I am in the process of filing a formal complaint with the Provost's office, copying the Dean of the business school, the Provost, and the President.[10]

28. I sent an email to Defendants Le and Ring (see Exhibit P14-06  ) on Sunday, <u>October 17, 2021</u>, inquiring why my grade for MGMT 604 was still "IB" in BOSS even though the University due date for grades was Oct. 8, 2021[11]. *They ignored my email, without any response, for five (5) school days.* I checked my grade again on <u>Oct. 21, 2021</u> and the system showed me that the teacher was changing the grade. Finally, on Friday, Oct. 22, 2021 I checked again and found that my grade has been changed to a C (Exhibit P14-03). I immediately emailed Defendants Le and Ring again, asking them why and informing them that I would appeal my grade and amend my formal complaint, if I did not hear from them by end of the business day. Defendant Ring responded finally (and immediately this time), saying that the grade for my paper is a B, and that for my presentation is a D, so the overall grade is a C, suggesting a 50/50 split, a **LIE**. This is totally **arbitrary** and **discriminatory** as there is *NO grading formula or*

---

[9] "Pretext to Motive: Even if an entity produces evidence of a legitimate reason for the adverse action, a violation can still be found if the reason is *a pretext to hide actual motive*. This can be proved through evidence that an individual was *treated differently* … or subjected to *heightened scrutiny* after engaging in a protected activity." (*LaTech Policy 1441.4.1.4*) This is a clear violation of *LaTech Policy 1439 (discrimination)*.

[10] This issue has been reversed by the Provost through the Dean, but kept here to show their systematic attempts to retaliate via discrimination.

[11] Oct. 8, Fall Quarter 2021 - Deadline for faculty submission of "I" grade changes from Spring & Summer (see Exhibit P14-08)

*scale* at all in the Course Syllabus[12] (see Exhibit P14-09), and an **abusive** use of discretion to **retaliate** against my "hot" email on Oct. 4, 2021 intended to further clarify my academic position. Quite the contrary, the Course Syllabus states unequivocally that "*Course evaluation will be based on quality of work completed in the working paper.*" That is, "presentation" is NOT part of it.[13]

29. As I emailed back to Defendant Ring on the same day (Oct. 22, 2021), asking **why he gave me a "D" for presentation** (with NO response, *evidence for **retaliation**, LaTech Policy 1441.4.1.3*, and arguing that, at any rate, they should not give me a D just because I defended my methodology. I believe that's what I am supposed to do, as a doctoral candidate, an independent thinker, in a school with academic freedom, and that is my freedom of speech protected by the First Amendment and LaTech Policy 1311. In fact, **they did NOT give me a D for presentation**, because Dr. Walters (advisor for my paper and my GA boss) told me on Oct. 4, 2021 during a 20-minute plus phone call starting at **9:00am** (see Exhibit P14-17) and then confirmed in his office (around **12:30pm** when I picked up the exam to proctor on Oct. 6)[14] that **my grade is a B**, and that it is **my final grade** after they three **had already discussed my**

---

[12] In contrast, in ALL other syllabi for courses I took in the College, including those from Defendants Son Le, Kirk Ring, and Dr. Walters (all three involved in MGMT 604, see, e.g., a copy of the syllabus for  BUSN 650 form Defendant Ring himself in Exhibit P14-11), there are clear **grading formulas** (weights of grade components) and **scales** (percentage score & corresponding letter grade), as highlighted, leaving much less room for **caprice and malice**. Ironically, in both of Defendant Ring's syllabi, it says "…does not discriminate…" (Exhibit P14-09) and "…free of discrimination…retaliation…" (Exhibit P14-12). This man says one thing, does another, truly hypocritical.

[13] Actually, Ruiyang Ma (another doctoral student in the class) did not even show up for the presentation on Oct. 1, and she's still safe and sound. Ironically, there is NO mention of presentation as a grading component (*grading events*), NO grading formula or scale (*methods of evaluation*) in the Course Syllabus, leaving huge room for **caprice & abuse**, in violation of *LaTech Policy 2205.1&2*, even though he is the unit head, who is supposed to enforce the policy in the unit.

[14] The text messages with Dr. Walters on Oct. 3 in Exhibit P14-14 show that I was not comfortable with Defendant Le being on my committee, owing to his behavior during my presentation, and I was worried about my grade, and we agreed to talk on the phone at 9:00am, Oct. 4; I picked up the exam around 12:30 pm on Oct. 4; and returned the exam on Oct. 6. Also, the screenshot shows that I called Dr. Walters for 20 minutes and 38 seconds, starting from 9:00am on Oct. 4, as agreed upon in the text messages, talking about my grade and committee.

presentation,[15] but BEFORE I sent the "hot" email at **3:44pm** (see Exhibit P03-01) on the same day to further clarify my points respectfully.

30. Defendant Ring **changed my grade to a C because of the "hot" email** I wrote on Oct. 4 (AFTER Dr. Walters had told me that I got a B) to further clarify my points respectfully, after **Defendant Ring effectively called me an "idiot"** when I defended my academic position in my presentation. That is **retaliation**, as he told me that **I put them** (Le and Ring) **to shame by that email** during the meeting on Oct. 18, 2021, even though that was never my intention. As described earlier, **he dithered about changing my grade until Oct. 21, 2022**, surely an audacious move.

31. Actually, as I said in my email to them on the same day (Oct. 22), they **intentionally ignored** my first inquiry on Oct. 17, 2021 for a full school week, after having already delayed the grade submission for a week, ignoring the due date a week earlier, **abusing** their power and the system **to deprive me of my right to appeal my grade**, as per University policy, which requires initiation of grade appeal within ten (10) school days. In brief, the grade change is **abusive**, **discriminatory**, and **retaliatory**.

32. In summary, it is obvious that, throughout the ordeal for me, instead of de-escalating the situation and resolving the issue, as professionals and role models are supposed to do, the trio led by Defendant McCumber has been **systematically abusing, harassing, intimidating, suppressing, and revenging** on me, trying to **kill my student career** here ASAP in a reckless manner, against my **free speech right**, as per the First Amendment, LaTech Policies 1311 (free speech on campus) and 1441 (retaliation).

## IV. Exhaustion of Administrative Remedies

---

[15] The Course Syllabus states that "*final assessment* of the student's work will be determined by *the faculty member associated with the project*, Dr. Son Le, and Dr. Kirk Ring."

33. I appealed formally to the Dean of the College (Christopher Martin), the Provost (Terry McConathy), and the President of the University (Defendant Les Guice), whose decision is final. All **erred** hand in glove in denying my appeals, by **ignoring** the **root cause** of the case (the **insult** on Oct. 1, 2021 & my **email** on Oct. 4, 2021), and **pretending** that the GA termination and grade tampering (with the 2nd retaliation reversed before my formal appeals to them) are just **routine** incidents, instead of parts of a **systematic retaliation campaign against** my freedom of speech on campus. Throughout the ordeal, the perpetrators and the three administrators above **turned a blind eye** to the **two critical questions: Why give me a "D" for presentation**, even if it had been a grading component (it is NOT, according to the Course Syllabus), and **Why terminate my GA** in the **middle** of the Fall term & **shortly after** my email on Oct. 4, 2021? For **retaliation**, as per *LaTech Policy 1441.4.1*, as detailed point by point earlier. Shockingly, Defendant Les Guice said "I find **no evidence of systematic retaliations**", after his so-called "thorough" review, in his summary denial without a statement of reasons (dated Nov. 22, 2021, See Exhibit P15-01), just like his subordinates (Terry McConathy and Christopher Martin). Apparently, like his underlings (the provost and dean), he *intentionally ignored ALL clear violations* of the First Amendment and related LaTech Policies (1311 & 1441, in particular), as summarized in my appeal submission email dated November 14, 2021 (See Exhibit P15-01).

34. Just like his underlings (the provost and dean), Defendant Guice erred in his cursory & superficial decision regarding the **wrongful termination of my GA**. He completely **ignored** the **root cause** of this complaint and their **systematic attempts to retaliate**, as detailed above. In particular, he selectively **ignored** the hard evidence and arguments based on it presented by me to prove their systematic attempts to retaliate in the case of GA, as detailed earlier.  Since there is

**NO specific statement of reasons** in his denial, as is the case in his underlings' summary denials, I can NOT rebut further, except those presented by the gang of three perpetrators (i.e., Defendants Le, Ring, McCumber) during the meeting on October 18, 2021, which I've already rebutted point by point earlier, as per the First Amendment and related LaTech Policies (1311, 1441).

35. Again, as rebutted earlier, I did NOT travel home for visit or vacation when school is officially open, except for Covid-19 vaccine, which should be permissible in this pandemic, as per President Biden's Executive Order 14042. I did NOT falsify time sheet. I performed my GA work satisfactorily overall, albeit not perfectly, as is a tall order for everybody, as evidenced by the email sent by Defendant McCumber to ALL GA's on Oct. 8, 2021 (see Exhibit P06), as rebutted earlier. Given that it's a common issue, **why ME alone**? Do I deserve this **discriminatory** treatment? No. The fact that they did not terminate my GA quarters ago proves that **the so-called "in residence" issue and distorted "dissatisfactions" with my GA work in the past**, even if all true, **was NOT serious enough for termination**. If not then, **why NOW** in the **middle** of the term & **right after** the email, which Defendant Ring wanted to talk about & said put them to shame? For **retaliation** against my freedom of speech protected by the First Amendment and related LaTech Policy (1311, 1441.4.1.1&2) Clearly, it's a **discriminatory**, wrongful termination.

36. Just like his two subordinates (the provost and dean), Defendant Guice erred in his cursory & superficial decision regarding the **retaliatory tampering of my grade** for MGMT 604. Like his two underlings (the provost and dean), Defendant Guice completely **ignored** the history of this complaint (the **root cause**) and their **systematic attempts to retaliate**, as detailed earlier. In particular, he selectively **ignored** the hard evidence and arguments based on it

presented by me to prove their systematic attempts to retaliate in the case of grade tampering, pursuant to the First Amendment & related LaTech Policies (1311, 1441).

37. Once again, as rebutted earlier, in his grading for ME, Defendant Ring ignored the University grades due date (Oct. 8, 2021) **discriminatorily** and intentionally by delaying the grade change for two good weeks until Oct. 22, 2021, abusing his administrative power NOT available to a regular faculty member to deprive me of my right to a timely appeal.

38. Defendant Ring **discriminatorily** abused his discretion by conspicuously deviating from his own course syllabus, which says that "*Course evaluation will be based on quality of work completed in the working paper*." That is, "presentation" is NOT part of it, as made clear earlier.[16] Even if presentation had been a grading factor, there is **NO grading formula at all** in the course syllabus, let alone a **50/50 split** implied in the "C" eventually assigned to me in retaliation, as made clear earlier. Even if presentation had been a grading component, **why a "D" for my presentation**, as I asked pointedly in my email to Defendant Ring on Oct. 22, 2021 (See Exhibit P14-04, but with NO response, evidence for **retaliation,** per LaTech Policy 1441.4.1.3)? He should NOT give me a "D" just because I rightfully defended my academic points, as made clear in the same email. Apparently, the "D" was arbitrarily and **discriminatorily** added as a component by Defendant Ring to **retaliate**. This is based on the fact that Defendant Ring *said* during the meeting on Oct. 18, 2021 that my email on Oct. 4, 2021 put him and Defendant Le to shame by proving them wrong and I declined to meet with them about the email, as discussed earlier (LaTech Policy 1441.4.1.1). In contrast, Dr. Walters, the supervisor of my term paper, told me in person in his office on Oct. 4, 2021 that I got a B for the course, which is my final grade, as made clear before. He did NOT even mention the presentation grade, which is NOT

---

[16] Actually, Ruiyang Ma (another student in the class) did not even show up for the presentation on Oct. 1, 2021, but she's still safe and sound, proving that indeed presentation is NOT part of the evaluation.

part of the final grade, as per the Course Syllabus.

39. Clearly, Defendant Ring **LIED** as a professor, by willfully making false statements that contradict his own course syllabus, a sad low for anybody in a profession treasuring **integrity**. Surprisingly, Defendant Guice, just like his two underlings (the provost and dean), chose to condone such pathetic and unethical behaviors in higher education where professors are supposed to be role models, instead of academic bullies. These academic bullies should at least be *removed from their administrative positions*, if not fired from their academic positions, for their professional misconduct (*systematic retaliations against my free speech right*), to clear up the atmosphere, pursuant to LaTech Policy 1441.5.

40. Just like his two underlings (the provost and dean), Defendant Guice completely ignored the "due process", as provided in LaTech Policy 1441 (Exhibit P09-06), which states that:

"Level 2 – If either party to a complaint of unlawful retaliation wishes to appeal the Level 1 decision, an appeal of the written decision must be made in writing within 10 business days of the receipt of the Level 1 Complaint determination. The appeal should be sent to the Office of *the President* of the University who *will forward the appeal to the University EEO Advisory Committee for a review and determination.* ...
*Prior to the EEO Advisory Committee's review, a trained investigator appointed by the President of the University ... will:*
    1. Review and investigate the Level 1 complaint decision;
    2. Collect and clarify additional available facts about the alleged incident;
    3. *Meet with the complainant* and the accused individual, separately, if appropriate.
The trained investigator will provide a report to the EEO Advisory Committee. The EEO Advisory Committee will review the Level 1 decision and the appeal as well as the investigator's report, and will make a determination regarding the Level 1 decision and will provide detailed findings along with any recommendations for appropriate action to the President of the University for consideration." (emphasis added)

41. Obviously, contrary to the policy mandate, Defendant Guice **did NOT follow the due process** of handling a blatant case of retaliation: he reached his perfunctory determination ("no evidence of systematic retaliations") in merely a week (November 14 – 22, 2021), after his so-

called "thorough review". He **did NOT "forward the appeal to the University EEO Advisory Committee**[17] for a review and determination". He **did NOT appoint "a trained investigator"** to investigate the case, as evidenced by the fact that nobody met with me, "the complainant". By **completely compromising the due process mandated by Policy 1441**, Defendant Guice could easily **turn a blind eye** to all the evidence of retaliation, as defined in Policy 1441 & pointed out by me in my appeals, & my arguments based on it, leading to his perfunctory determination and decision, which affronts confidence, fairness, and justice.

42. In short, by **failing to follow the policy procedures** in handling this case of systematic retaliations, Defendant Guice, like his two underlings (the provost and dean), **could easily ignore evidence and arguments from my side**, leading to the one-sided, unfair, unjust decisions and letting the perpetrators easily get away with academic murder. Suspiciously, throughout the appeals, Defendant Guice, just like his two subordinates (the provost and dean), **kept their dealings with the other party** (their respective underlings) **secret from me**, the victim, unlike in an open court doing things above board, **casting serious doubts about the integrity of the process**. Alas, we are dealing with people who are supposed to be role models in higher education.

43. As detailed earlier, I have exhausted all administrative remedies for this case, and this filing is abundantly within the five-year federal statute of limitations (18 U.S.C. § 3282) for this type of case, starting from the wrongful termination date (Oct. 18, 2021) of my GA by the three perpetrators (Le, Ring, and McCumber).[18]

**V. My Academic Career Ruined by Defendants' Unconstitutional Actions**

---

[17] This is relevant to my case because of the wrongful termination of my GA (an employment issue), which is an integral part of my higher education, albeit a minor component of the retaliation campaign because my grade and academic career are surely much more important.

[18] Certainly, it is well within the one-year limit provided by *LA Civ Code* 3492.

44. As a result of their unconstitutional retaliation via discrimination, my graduate assistantship was terminated on October 18, 2021.

45. As a result of their unconstitutional retaliation via discrimination, my grade for MGMT 604 was lowered from B to C.

46. As a result of their unconstitutional retaliation via discrimination, my dissertation chair (Dr. Walters) reneged on his commitment to be my dissertation chair, citing *"perusal of the various emails you've sent and copied me on"* in his email dated October 13, 2021 (See Exhibit P16-01). The "various emails" are those relevant to the dispute regarding the research method in my summer term paper, started by my "hot" email sent on October 4, 2021.

47. I attempted to find another dissertation chair to finish my doctoral degree, but to no avail. This is due to their public naming and shaming of me in the classroom to teach the doctoral students how to "behave", using me as an example. This was done by Defendant McCumber in a class (**BUSN 600, Fall 2021**, Exhibit P17-02) I personally attended.[19] I can imagine what they did in private among the faculty members in the department and college at large. This is why Dr. Fuller in management also eventually declined (on January 24, 2022) to be my dissertation chair, after tentatively agreed in person earlier in his office and asked me to find a topic at the intersection of management and information technology, after dragging it out for seven (7) good weeks (See Exhibit P17-3~5). That is, even if I went out of my comfort area with real interest to follow his direction and implored him twice by email and once by phone, he still rejected me against his earlier tentative commitment. Certainly, the public bashing and private badmouthing by the three defendants (Le, Ring, McCumber) has created an appallingly toxic

---

[19] For example, on October 13, 2021, Defendant McCumber said in the class that he discussed with Instructor Selwyn Ellis about my "hot" email, teaching the doctoral students how to handle criticism "diplomatically" and "politely". As detailed before, the email I sent on October 4, 2021 is done in the right manner (diplomatic and polite), per *LaTech Policy 1311*, albeit rightfully defensive, as a routine in academia.

environment for me, giving professors enormous pressure to distance themselves from me to avoid personal reprisal by the three defendants as administrators.

48. After sticking it out for the Winter 2022 quarter (Exhibit P14-03), hoping against hope to find a dissertation chair, as led on by Dr. Fuller in Fall 2021, I was forced to drop out in the Spring 2022 quarter, as strongly desired by the three defendants (Le, Ring, McCumber), who said during the meeting on October 18, 2021 that "I should leave the doctoral program". That is, **instead of helping a student to succeed after having worked so hard for more than two years and earned the doctoral candidacy, as they are supposed to do, they successfully ruined my academic career**. For sure, they wished to kick me out at the end of Fall 2021, by cutting my dissertation committee formation time from six (6) months to merely two (2) months, as stated earlier. Although the blatantly *discriminatory* decision was reversed by the provost, the *expressed malice* by the three defendants has been written in stone. During the same meeting, they also said that "we'll see whom you can find to be your chair", clearly **hell-bent on ruining my academic career**.

**VI. Other legal allegations**

49. At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants, who acted together under color of a statute, regulation, custom, or usage of the State of Louisiana, in violation of the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. §§ 1983 & 1985 (3).

50. Defendants knew or should have known that they were violating my constitutional and contractual rights by their discriminatory and retaliatory actions because of the views I expressed legitimately by email, in violation of the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. §§ 1981, 1983, 2000c–8, 2000c–9, & 2000h–1.

51. I have suffered and am suffering irreparable harm from Defendants' discriminatory and retaliatory decisions challenged here.

52. I have no adequate or speedy remedy at law to correct the deprivation of my rights.

53. Defendants' actions, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

54. Defendants' discriminatory and retaliatory actions are narrowly tailored as applied to me despite that my expression of reviews does not impact any of the legitimate interests Defendants might have.

55. Unless the decisions of Defendants are enjoined, I will continue to suffer irreparable injury.

56. Under 42 U.S.C. §§ 1983, 1988, and 2000c–8, I am entitled to appropriate relief invalidating Defendants' challenged decisions.

## FIRST CAUSE OF ACTION
### Violation of Plaintiff's First Amendment Right to Freedom of Speech
### Discrimination in Public Education
### (42 U.S.C. §§ 1981, 1983, 1985(3), 2000c–8, 2000c–9, & 2000h–1)

57.  Plaintiff repeats and realleges each of the prior allegations in this complaint.

58.  The discriminatory actions perpetrated by Defendants Le, Ring, and McCumber, as connived by Defendant Guice and his two underlings (the provost and dean) , violate 42 U.S.C. § 1981 (equal rights under the law)[20], because all actions (grade tampering, dissertation committee formation time curtailing, GA termination) were only arbitrarily inflicted on me, not any other student in the class. This is especially true in the case of public naming & shaming of me to ruin my reputation and academic career.

---

[20] 42 U.S.C. § 1981 (c) provides that "The rights protected by this section are protected against *impairment* by *nongovernmental discrimination* and impairment *under color of State law.*" (emphasis added) Clearly, this law applies exactly to my case.

59. All those discriminatory actions are in violation of 42 U.S.C. § 1983[21] (deprivation of free speech right), because they did it shortly after I exercised my free speech right.

60. All those discriminatory actions are in violation of 42 U.S.C. § 1985(3) (conspiracy to interfere with civil rights), because they were perpetrated together and connived hand in glove.

61. All those discriminatory actions are in violation of 42 U.S.C. § 2000c–8 [22] (discrimination in public education), because those actions occurred in a university for public education.

62. All those discriminatory actions are vengeance wreaked on my exercising free speech right, a special basis for discrimination pursuant to 42 U.S.C. § 2000c–9 (classification and assignment).

63. All those discriminatory actions are in violation of 42 U.S.C. § 2000h–1 (double jeopardy), because all those actions were *done at least twice* for me (once before and once after my "hot" email sent on October 4, 2021 – grade lowered from B to C, dissertation committee formation time shortened from 6 to 2 months, GA performance lowered from satisfactory to unsatisfactory), instead of only once for all other students in the class.

64. By punishing me for expressing my views on "research methods", Defendants have engaged in *content and viewpoint discrimination* in violation of the First Amendment. Defendants evaluated the content and viewpoint of my speech to determine

whether they would take any adverse actions against me based on my speech regarding "research methods". Defendants retain unbridled discretion to discriminate based on content or viewpoint.

---

[21] 42 U.S.C. § 1983 provides that "Every person who, *under color of* any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to *the deprivation of any rights*, privileges, or immunities secured by the Constitution and laws, shall be *liable* to the party injured in an action at law, suit in equity, or other proper proceeding *for redress*, …" (emphasis added)
[22] 42 U.S.C. § 2000c–8 provides that "Nothing in this subchapter shall affect adversely the right of any person *to sue for or obtain relief* in any court against *discrimination in public education*." (emphasis added)

Defendants' discriminatory and retaliatory actions violate my right to free speech under the First Amendment to the U.S. Constitution and LaTech Policy 1311 and 1439.

65. As stated above, Defendants *actually discriminated* against me by respectively perpetrating and conniving all illegal actions (regarding grade, dissertation committee, GA) on me, causing me *actual harms* (course grade lowered, loss of graduate assistantship and the learning experiences associated with it, destruction of my dissertation committee, and my academic career ruined), against the First Amendment and other federal laws cited above and their own policies (LaTech Policy 1311, 1439, 1441).

## SECOND CAUSE OF ACTION
### Violation of Plaintiff's First Amendment Right to Freedom of Speech
### Retaliation
### (42 U.S.C. §§ 1981, 1983 & 2000c–8)

66. Plaintiff repeats and realleges each of the prior allegations in this complaint.

67. My speech, regardless of how it is delineated, is protected expression.

68. All those discriminatory actions are for retaliation, in violation of my free speech right protected by the First Amendment to the U.S. Constitution.

69. By punishing me for expressing my views on "research methods", Defendants have retaliated and are retaliating against me for exercising my First Amendment rights.

70. When I communicated my views on "research methods" by emailing the defendants (Le and Ring), I was off-duty and spoke as a private citizen with my peers.

71. Defendants' retaliatory and unconstitutional actions against me would deter a person of ordinary firmness from exercising his right to free speech in the future.

72. Defendants took those retaliatory and unconstitutional actions against me because of the views (*viewpoint and content*) I expressed regarding "research methods." That is, my protected free speech **motivated** the Defendants' retaliatory actions. See *Thompson v. City of*

*Starkville,* 901 F.2d 456, 460 (5th Cir.1990) (citations omitted).

73. I **suffered** an adverse employment decision by suddenly losing my GA in the middle of the academic quarter, owing to their unconstitutional retaliations against my First Amendment rights. *See Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir.1997).

74. When I expressed my views on "research methods" I was speaking on a matter of **public concern**, which applies to any doctoral students and teacher-scholars, as evidenced by the research articles cited in my summer term paper. See *Harris v. Victoria Independent School District*, 168 F.3d 216, 221 (5th Cir. 1999).

75. My interest, as a doctoral student at a public university, in discussing matters of public concern in the context of research and teaching **outweighs** Defendants' interest in the efficient provision of services. Actually, my speech never prevented Defendants from efficiently providing services (or even threatened to do so). *Harris*, 168 F.3d at 223.

76. The Defendants in this case are not entitled to **immunity**, either qualified or absolute, just like those in the *Victoria Independent School District* in *Harris*, 168 F.3d at 223-225.

### THIRD CAUSE OF ACTION
### Violation of Plaintiff's Fourteenth Amendment Right to
### Procedural Due Process of Law
### (42 U.S.C. §§ 1981, 1983 & 2000c–8)

77.  Plaintiff repeats and realleges each of the prior allegations in this complaint.

78. As a doctoral student at the University, I had a property interest in my continued employment for the term of my contract, including graduate assistantship in Fall 2021 and future terms (Winter 2021, Spring 2022, etc.), as specified in Defendant Le's email (dated Sep 9, 2021) and Defendant Ring's email (dated Sep 14, 2021).

79. Procedural due process requires, before a public-university doctoral student like me can be terminated, that *I be given notice and an opportunity for a hearing before an impartial*

*tribunal*. In contrast, I was fired on the spot on short notice during the meeting with the Defendants (Le, Ring, McCumber) on October 18, 2021, without having been served a specific notice or granted a hearing before an impartial tribunal.

80. The University policy (*LaTech Policy 1441*) also requires the University to abide by certain procedures, such as use of a "*trained investigator*" and "*University EEO Advisory Committee*" and "*meet with the complainant*", before it can fire me. All required procedural due process was skipped by Defendant Guice in my case.

81. By failing to give me notice or an opportunity to respond in advance of firing me, and by failing to follow the procedures in the University's Policy (*LaTech Policy 1441*), Defendants have denied me adequate procedural due process, in violation of the Fourteenth Amendment to the U.S. Constitution.

## FOURTH CAUSE OF ACTION
### Violation of Plaintiff's Fourteenth Amendment Right to
### Equal Protection of the Law
### (42 U.S.C. §§ 1981, 1983 & 2000c–8)

82.  Plaintiff repeats and realleges each of the prior allegations in this complaint.

83. By punishing me for expressing my views on "research methods" via **discriminatory** *double standards* in all related issues (grading, GA evaluation, dissertation committee formation time) for me, not any other students in the class, Defendants have violated and are violating my right to equal protection under the Fourteenth Amendment.

84. Since Defendants have *retaliated* against me because of my protected expression, have used *double standards* in all related issues listed above, and have violated my right to *due process* of law, **discriminatory intent** is presumed.

85. Defendants took adverse employment actions against me in a *discriminatory* and unequal manner, used *double standards* in all actions (grading, GA evaluation, dissertation

committee formation time) with me *versus* other students in the class, in direct violation of my **equal protection** rights.

86. As stated above, Defendants *actually discriminated* against me by respectively perpetrating and conniving all illegal actions (regarding grade, dissertation committee, GA) on me, causing me *actual harms* (my course grade lowered, GA terminated, dissertation committee destroyed, and academic career ruined), against the Fourteenth Amendment and 42 U.S.C. §§ 1981 & 2000c–8.

## FIFTH CAUSE OF ACTION
### Breach of Contract

87. Plaintiff repeats and realleges each of the prior allegations in this complaint.

88. As a graduate assistant at the University, I had a property interest in my continued employment for the term of my contract (my accepted GA offer dated April 8, 2019, See Exhibit P08-1~2), including graduate assistantship in Fall 2021, as specified in Defendant Le's email (dated Sep 9, 2021), and future terms (Winter 2021, Spring 2022, Summer 2022, etc.), as specified in Defendant Ring's email (dated Sep 14, 2021). Their assignments confirm their "*satisfactory*" evaluation of my job performance in the prior periods.

89. Under Louisiana law (*LA Civ Code 1906*), Defendants Le and Ring's written assignments (as successive executions of my accepted GA offer dated April 8, 2019, (See Exhibit P08-1~2)) and my continued acceptances formed *enforceable contracts* between the University and me.

90. By firing me in the middle of the Fall 2021 Quarter, the University has refused to honor those contracts, *contradicting* their own "*satisfactory*" evaluation of my job performance in the prior periods, *shortly after* the "hot" email I sent on October 4, 2021.

91. Defendants have *breached their contracts* with me for at least two reasons: (1) they refused to honor the written agreements between Defendants and me, and (2) they disciplined me without notice & a hearing before an impartial tribunal and without any of the procedural protections guaranteed under the University's policy (*LaTech Policy 1441*).

92. Defendants have *no legal excuse* for breaching those contracts. They breached the contracts to retaliate against my free speech right protected by the First Amendment to the U.S. Constitution and the associated University policy (*LaTech Policy 1311*).

93. Plaintiff is entitled to *recover reasonable costs* because this is a claim on a written contract. As a result of Defendants' breach of the agreement, Plaintiff has been forced to spend a lot of time and energy to prosecute this case and is suing for the reasonable and necessary fees and costs I have incurred to pursue this present action. All conditions precedent to recovery of the requested fees and costs have been fulfilled.

### SIXTH CAUSE OF ACTION
#### Punitive damages

94. Plaintiff repeats and realleges each of the prior allegations in this complaint.

95. The conduct of Defendants, as set forth hereinabove, was *intentional, willful, wanton, oppressive, malicious, and reckless*, acted only out of *retaliation* **to kill my academic career**, inflicting enormous *emotional distress* and *personal humiliation* on me. Such conduct manifests a specific *intent to cause harms* to Plaintiff. Accordingly, punitive damages should be imposed against Defendants to *punish and deter* Defendants from repeating or continuing such unlawful conduct.

96. "Single-digit multipliers are more likely to comport with due process [clause of the Fourteenth Amendment], while still achieving the State's goals of deterrence and retribution…" *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 410 (2003) That is, punitive

damage awards should not exceed single-digit multipliers of the compensatory damages award, which is $1 million for *a year and a half* of emotional distress (*Id.*). In view of the *intentional, wanton, willful, malicious, and reckless* nature of the unconstitutional discriminations and retaliations in this case and their *lifelong* impacts on me,  a 9-to-1 ratio should be appropriate to serve as an exemplary punishment and deterrent in higher education. That is, the punitive damage should be nine (9) times the compensatory damages presented below ($1,384,886 in total).

***PRAYER FOR RELIEF***

Plaintiff respectfully requests that this Court enter judgment against Defendants and provide the following reliefs:

A. A declaratory judgment that Defendants violated the First and Fourteenth Amendments, and breached their contracts with me because I engaged in protected speech;

B. A preliminary and permanent injunction ordering Defendants sued in their official capacities, their agents, officials, servants, employees, and any other persons acting on their behalf:

1. To reinstate my dissertation chair (Dr. Walters), who backed out of his commitment under pressure from the Defendants, so that I can finish my doctoral degree, a right I worked so hard for so long to earn;

2. To restore my grade for MGMT 604 from C to B;

3. To honor my GA contract (with back pay & tuition refunds), which is an integral part of my doctoral education, offering me the necessary opportunities to sharpen my teaching and research skills to be a successful teacher-scholar;

4. To purge any and every reference to this entire incident (including the University's

30

discriminatory & retaliatory actions, my appeals, and this legal action) from my student file; and

5. Sanction the perpetrators (Le, Ring, McCumber) for their systematic retaliations against my free speech, as per University policy (*LaTech Policy 1441.5, Exhibit P09-07*), to help to restore confidence, fairness, and justice in public education;

C. Nominal, compensatory, and punitive damages for the violation of my First and Fourteenth Amendment and contractual rights, including lost tuitions & fees paid during my two years of DBA study ($19,820, Exhibit P18-01), lost GA pays for the two remaining years ($16,000/year x 2 years = $32,000, Exhibit P08-1~2), opportunity wage loss for an MBA-holder during my two years of DBA study ($67,296/year x 2 years = $134,592, Exhibit P18-02~03), and lost potential wage hikes during my prospective academic career ($43,962/year x 27 years = $1,186,974, based on average wage difference between a DBA-holder and an MBA-holder for 27 years until retirement at age 70, Exhibit P18-02~03),[23] under 42 U.S.C. §§ 1981 (c), 1983, & 2000c–8;

D. Reasonable minimum fees (e.g., court filing fees ($402), servicing costs (~$600), ~$1,000 total, *if IFP denied*), costs (e.g., consultation, legal research, writing, oral argument, lost time & energy, ~$10,000 = 100 hours x $100/hour), and disbursements (e.g., travel, lodging, ~$500 = $200 + $300) in this action under 42 U.S.C. §§ 1981 (c), 1983, 1988, & 2000c–8; and

E. All other further reliefs to which I may be entitled.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable.

### DECLARATION UNDER PENALTY OF PERJURY

---

[23] According to *glassdoor.com*, as of end of year 2021, the average annual salary is $111,258 and $67,296 respectively for an assistant professor in management and an MBA graduate, with a minimum wage hike for a doctoral degree being $43,962 (Exhibit P18-02~03). These numbers should be about right for a DBA in management from LaTech. By ruining my academic career, the Defendants effectively deprived me of my career-long wage hikes.

I, RUIZHU (RACHEL) DAI, a citizen of the United States and a resident of the State of Mississippi, declare under penalty of perjury under 28 U.S.C. § 1746 that the above is true and correct to the best of my knowledge.

Executed this 3rd day of June, 2022, in Hattiesburg, Mississippi.


Respectfully submitted on the 6th day of June, 2022.


Ruizhu (Rachel) Dai
6 Black Oak Dr.
Hattiesburg, MS 39402
Phone: (601) 550-7826
E-mail: racheldai@hotmail.com