UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**RUIZHU DAI**                                    **CASE NO. 3:22-CV-01551**

**VERSUS**                                        **JUDGE TERRY A. DOUGHTY**

**SON LE, ET AL.**                                **MAG. JUDGE KAYLA D. MCCLUSKY**

<u>**MEMORANDUM RULING**</u>

Before the Court is a Motion for Summary Judgment [Doc. No. 31] filed by Defendants, Son Le ("Le"), Kirk Ring ("Ring"), William McCumber ("McCumber"), Christopher Martin ("Martin"), Terry McConathy ("McConathy"), and Les Guice ("Guice") (collectively, "Defendants"). Rachael Dai ("Plaintiff") filed a response in opposition [Doc. No. 33], and Defendants filed a reply [Doc. No. 34].

For the reasons set forth herein, Defendants' Motion for Summary Judgment is **GRANTED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On June 6, 2022, Plaintiff filed the instant action asserting five claims against Defendants. Specifically, Plaintiff alleges that Defendants (1) discriminated against her by depriving her of her First Amendment rights; (2) retaliated against her for exercising her First Amendment rights; (3) deprived her of procedural due process; (4) violated her equal protection rights; and (5) breached their employment contract.[1] As to claims one through four, Plaintiff alleges Defendants are liable under 42 U.S.C §§ 1981, 1983, 1985(3), 2000c-8, 2000c-9, and 2000h-1.[2] As to claim five, Plaintiff alleges Defendants are liable under applicable Louisiana State law.[3]

---
[1] [Doc. No. 1 Complaint, pp. 23, 25–28]
[2] [Id.]
[3] [Id. p. 28]

Plaintiff enrolled in the Doctoral program to pursue a Doctorate in Management at Louisiana Tech University in the Fall Semester of 2019.[4] Upon her acceptance, Plaintiff was made a graduate assistant ("GA") and received a yearly stipend of $15,000.[5] As a part of the Doctoral program, each participating student must present their research paper to faculty and students; during the presentation, students must defend their position and research.[6] On October 1, 2021, Plaintiff presented her research paper to Le and Ring, both professors in the Management Department. Plaintiff's presentation was met with criticism.[7]

Plaintiff alleges that Le "vehemently criticized" her research.[8] However, Defendants assert that Plaintiff seemed unprepared in discussing her research paper and could not give satisfactory answers to questions.[9] Moreover, according to Defendants, Plaintiff was "defensive, argumentative, and hostile."[10] After her presentation concluded, Plaintiff alleged that Ring effectively called her an idiot in front of the class and other professors.[11] Conversely, Defendants stated that Ring was merely encouraging students to listen to the constructive criticism of their professors.[12] Immediately following the presentation, Plaintiff was removed from her teaching assignment that was assigned to her as a part of her GA responsibilities and received a grade of "D" on the presentation, which dropped her overall course grade to a "C."[13]

In response to the criticism and associated repercussions, Plaintiff sent an email to McCumber, Chair of the Management Department, and Le, which reads:

---

[4] [Doc. No. 31-2, p. 1]
[5] [Id.]
[6] [Id. p. 2]
[7] [Id.]
[8] [Id.]
[9] [Doc. No. 31-2, p. 2]
[10] [Id.]
[11] [Doc. No. 33, p. 2]
[12] [Doc. No. 31-2, p. 2]
[13] [Id. p. 2–3]

> Thank you for your comments and suggestions about my term paper presented last Friday. With all due respect and running the risk of being unprofessionally called an "idiot" in public for defending my position. I'd like to respectfully make some clarifications about your critique on my methodology.
>
> 1. Between the two alternative methodologies of event study, the switching-regression model (your so-called "moderate effect", See, e.g., Pindyck and Rubinfeld, 1988, p.138; Ferrell et al. 2016, p.604, attached) is used a lot less often than the standard event study method used in my term paper, as reviewed by McWilliams & Siegel (AMJ, 1997, attached), which critiqued a CSR paper by our former "superstar" Dr. Mark Kroll (AMJ, 1995).
>
> 2. Compared with the switching-regression method, the standard event study method pioneered by Fama et al. (1969) and updated by Fama & French (1993), partly for which Fama was awarded the Nobel prize, generates a lot richer results, possibly accounting for its popularity in business studies (accounting, finance, mgmt., etc.), as adopted in WRDS.
>
> 3. Finally, compared with the "ad hoc" "mishmash" control variables used in many management studies (Barnett, 2007, p.801, AMR, attached), the Fama-Frech 3-factor model provides better control with a more solid theoretical basis.
>
> Maybe, I'm barking up the wrong tree because the point of my term paper is NOT about methodology, while I fully understand that using the right method or using the method the right way is fundamental, as made clear by McWilliams & Siegel (AMJ, 1997, attached). Of course, I stand to be corrected, especially by Dr. McCumber, who is in Finance and was not there during my presentation.[14]

Following the above-quoted email, McCumber emailed Plaintiff on October 13, 2021, scheduling a meeting for October 18, 2021.[15] McCumber and Ring attended the meeting along with Dr. Gilbert from student affairs. At the meeting, Defendants discussed Plaintiff's email and questioned whether Plaintiff had a viable research topic.[16] Defendants allege that in an attempt to motivate Plaintiff to find a viable topic, her time to form a dissertation committee was cut to two

---

[14] [Doc. No. 33, p. 2]
[15] [Doc. No. 31-2, p. 2–3]
[16] [Id. p. 4]

3

months.[17] Plaintiff was also completely removed from her position as a GA.[18] Additionally, on October 13, 2021, Dr. Bruce Walters, a professor who agreed to chair Plaintiff's dissertation, notified Plaintiff that he would no longer hold that position.[19]

On October 28, 2021, Plaintiff appealed her grade and her termination as a GA to Martin, Dean of the College of Business.[20] Martin initiated an investigation speaking with professors, reviewing Plaintiff's paper and presentation materials, and assessing other students' grades.[21] Defendants contend that Martin's review revealed poor work quality and evidence that Plaintiff had declined to complete work required by her graduate assistantship.[22] After his review, Martin decided to uphold the grade and termination decisions.[23]

On November 14, 2021, Plaintiff emailed Guice, President of Louisiana Tech University, asking that he intervene on her grade and termination decisions; however, Guice upheld both decisions.[24] Plaintiff did not form a dissertation committee and resigned from the doctoral program in the Spring semester of 2022.[25] Plaintiff contends that she was unable to form a dissertation committee because Defendants ruined her reputation.[26]

In their motion for summary judgment, Defendants argue that they are entitled to sovereign immunity under the Eleventh Amendment and cannot be held liable in their official capacities.[27] Furthermore, Defendants argue that they have not violated any constitutional right of the Plaintiff and are entitled to qualified immunity for claims asserted against them in their individual

---

[17] [Id.]
[18] [Id.]
[19] [Doc. No. 33, p. 5]
[20] [Doc. No. 31-2, p. 4]
[21] [Id. p. 4–5]
[22] [Id.]
[23] [Id.]
[24] [Id.]
[25] [Id.]
[26] [Doc. No. 33, p. 5]
[27] [Doc. No. 31-2, p. 7]

capacities.[28] In response, Plaintiff alleges that Defendants waived sovereign immunity as provided by the Eleventh Amendment and that an exception exists allowing her to recover even if Defendants are protected by sovereign immunity.[29] Finally, Plaintiff argues that Defendants are not entitled to qualified immunity and reasserts that they have violated her First and Fourteenth Amendment rights.[30]

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

---

[28] [Id. p. 7–8]
[29] [Doc. No. 33, p. 7, 10–11]
[30] [Id. p. 13–14]

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted). Note that "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *see also Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978).

    **B.**    **Analysis**

Defendants move for summary judgment on all claims. First, Defendants argue that they are entitled to sovereign immunity on all claims asserted against them in their official capacity. Next, Defendants argue that they are entitled to qualified immunity for all claims asserted against them in their individual capacity. Specifically, Defendants assert that no genuine issue of material fact exists as to Plaintiff's claims that Defendants denied her of her constitutional rights. Finally, Defendants contend that, assuming a valid contract exists, Plaintiff cannot establish a breach of contract claim against them.

In response, Plaintiff asserts that Defendants are not entitled to sovereign immunity and have waived it though receipt of federal funds. Next, Plaintiff realleges that Defendants have conspired to retaliate, actually retaliated, and discriminated against her for her use of her First Amendment right. Plaintiff also asserts that Defendants violated her Fourteenth Amendment rights

by not affording her adequate process when her graduate assistantship was terminated and her grade was changed from a "B" to a "C." Finally, Plaintiff asserts that Defendants breached an employment contract by terminating her graduate assistantship in response to the use of her First Amendment rights. Each argument will be discussed in turn.

### 1. Sovereign Immunity

Defendants first contend that, as Louisiana Tech employees, they are entitled to sovereign immunity under the Eleventh Amendment for all claims asserted against them in their official capacity. In response, Plaintiff argues that the State has waived sovereign immunity through its acceptance of federal funds and that Defendants are not entitled to sovereign immunity because of the exception set forth in *Ex Parte Young*, 209 U.S. 123 (1908).

"The Eleventh Amendment is an explicit limitation on the judicial power of the United States." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984) (*citing Missouri v. Fiske*, 290 U.S. 18, 20 (1933)). Furthermore, "the Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). Sovereign immunity "extends to any state agency or entity deemed an alter ego or arm of the state." *Id.* (internal quotations omitted).

To determine whether Defendants are entitled to sovereign immunity, this Court must first determine whether Louisiana Tech University is an alter ego or arm of the state. The United States Court of Appeals for the Fifth Circuit ("the Fifth Circuit") has consistently held that Louisiana universities are considered "arms of the state" for the purposes of sovereign immunity. *See Strong v. Grambling State Univ.*, 159 F.Supp.3d 697, 707 (W.D. La.), *aff'd* 614 F.App'x. 776 (5th Cir. 2015) ("Grambling and the UL System Board are arms of the state and are thus entitled to

sovereign immunity."); *Raj v. La. State Univ.*, 417 F.3d 322, 327 (5th Cir. 2013) (finding that Louisiana State University is an arm of the state and entitled to sovereign immunity); *Laxey v. Louisiana Board of Trustees*, 22 F.3d 621 (5th Cir. 1994) (finding former University of Southwestern Louisiana was an arm of the state and entitled to sovereign immunity). Additionally, suits against state officers in their official capacities are treated as suits against the state itself. *Kermode v. Univ. of Miss. Medical Center*, 496 Fed. App'x. 483, 488 (5th Cir. 2012).

Louisiana Tech University is governed "under the supervision and management of the Board of Supervisors for the University System," similar to the other universities that the Fifth Circuit has found to be "arms of the state." *See* La. Rev. St. Ann. § 17:3217. Thus, Louisiana Tech University is an arm of the state and entitled to sovereign immunity. Furthermore, sovereign immunity extends to Defendants for claims against them in their official capacity as Louisiana Tech University faculty. *See Kermode,* 496 Fed. App'x. at 488 (holding that sovereign immunity extended to both Mississippi Medical Center and its faculty administrators sued in their official capacities).

Next, the inquiry turns to whether Louisiana has consented to suit in federal court or "Congress has clearly and validly abrogated the state's sovereign immunity." *Perez*, 307 F.3d at 327. As expressly stated in statute, Louisiana, and by extension its universities and their faculty, has not consented to the suit in federal court. *See* La. Rev. St. Ann. § 13:5106 ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."). Moreover, Congress has not abrogated Louisiana's sovereign immunity under any statute cited by Plaintiff. Thus, Defendants are entitled to sovereign immunity for all claims asserted against them in their official capacity.

Plaintiff next argues that the *Ex Parte Young* doctrine provides an applicable exception to Defendants' sovereign immunity. To fit this doctrine, "the suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal [law]." *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2000). Determining whether a suit complies with the requirements of *Ex Parte Young* is a question of fact and does not require an analysis of the merits of the claim. *Id.* "The court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (internal quotations omitted).

While Plaintiff's claims meet the first element of an *Ex Parte Young* analysis, they fail at the second element. Plaintiff is suing to redress past injury; the violations, if any, committed by Defendants occurred in the past and are not ongoing. As such, *Ex Parte Young* does not apply and Defendants are protected by sovereign immunity for all claims alleged against them in their official capacity. Because Defendants are entitled to sovereign immunity and *Ex Parte Young* does not provide an exception to their sovereign immunity, all claims asserted against them in their official capacity should be dismissed.

### 2. Qualified Immunity

Defendants next claim that they are entitled to qualified immunity for all claims asserted against them in their individual capacity. In response, Plaintiff argues that Defendants knowingly violated her clearly established constitutional rights under the First and Fourteenth Amendment, barring them from asserting qualified immunity. Specifically, Plaintiff argues that Defendants violated her First and Fourteenth Amendment rights by depriving her of adequate procedural due

process, equal rights under the law, retaliating against her for exercising her rights, and conspiring to violate her constitutional rights.

In certain circumstances, qualified immunity shields government officials performing discretionary functions from civil liability. *Anderson v. Creighton*, 107 S. Ct. 3034, 3038 (1987). In determining whether an official is entitled to qualified immunity, the Fifth Circuit applies a three-part test. *Aucoin v. Haney*, 306 F.3d 268, 272 (5th Cir. 2002). First, the court determines whether the plaintiff has alleged a constitutional rights violation. *Id.* If so, the court then determines whether the constitutional right was clearly established at the time of the violation. *Id.* If the court does not find an alleged violation of a constitutional right or finds that the constitutional right was not clearly established at the time of the violation, the inquiry ends. *Id.* However, if the court finds an alleged violation of a clearly established right, it must then determine whether the "official's conduct was objectively reasonable in the light of that established constitutional right." *Id.* The Court's analysis here does not need to go past the first step. Upon reviewing Plaintiff's constitutional claims, it is clear that Plaintiff has failed to establish that a constitutional rights violation occurred.

### a. Retaliation in an Employment Setting

Plaintiff first alleges that Defendants unlawfully retaliated against her in an employment setting. Retaliation claims have four elements: (1) the plaintiff must suffer an adverse employment decision, (2) the plaintiff must have spoken on a matter of public concern, (3) the plaintiff's interest in making the statement must outweigh the defendant's interest in taking the action, and (4) the plaintiff's speech must have been the motivating factor in the defendant's decision. *Harris v. Victoria Independent School District*, 168 F.3d 216, 220 (5th Cir. 1999); *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019).

Considering the first element, Plaintiff alleges that she suffered adverse employment action when her graduate assistantship was cut short in the middle of the semester and ultimately terminated. By alleging that she has been terminated from her position as a GA, Plaintiff has plead facts sufficient to show that she suffered an adverse employment action. *See Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.").

For the second element, Plaintiff must have spoken on a matter of public concern. In her complaint, Plaintiff alleges that she was terminated for expressing her views on different research methods. "To rise to the level of public concern, the [plaintiff] must speak primarily in their role as a citizen rather than as [an employee] addressing matters only of personal concern." *Victoria Independent School District*, 168 F.3d at 221. Determining whether speech rises to a level of public concern requires the court to look at the form, context, and character of the speech. *Id.*

In *Tompkins v. Vickers*, 26 F.3d 603, 605 (5th Cir. 1994), Tompkins made several statements criticizing his employer-school district for cancelling an art program at a historically black junior high school and sparing the art program at a historically white junior high school. After making the statements, Tompkins was removed from the school. *Id.* In evaluating his retaliation claim, the Fifth Circuit found that Tompkins statements were a matter of public concern. *Id.* at 606–7. As to the form of the statements, Tompkins wrote a letter to the editor of a local newspaper criticizing the decision, voiced his criticism at a meeting of the local school board, and spoke as a representative of the local teacher's organization. *Id.* at 607. Moreover, the cancellation of the art program was debated in the community. *Id.* The appellate court rejected the defendants' argument and found Tompkins's speech was constitutionally protected. *Id.*

In the instant action, Plaintiff contends that the form of the speech was public given that the debate that led to the statement was made within a classroom, and the statement was disseminated through the school's public email system. While Plaintiff did send the statement through the email system, the only people who received the email were those who were present at Plaintiff's presentation. Plaintiff did not send the email to other members of the school or inform the public of any grievance she had with the school's research methods. Moreover, unlike in *Vickers*, the statement was not on the subject of a widespread debate within the community. Since the statement was not made to the public and the public was not debating the issue, Plaintiff's statement was not of public concern. Plaintiff's statement was instead a private concern with the research methods chosen by the management department and therefore is not afforded constitutional protections. Since Plaintiff failed to establish a violation of her constitutional rights, Defendants are entitled to qualified immunity, and her retaliation claim should dismissed.

### b. Procedural Due Process

In her next argument, Plaintiff alleges that she had a property interest in her continued employment as a graduate assistant, and Defendants denied her of her procedural due process rights by terminating her graduate assistantship without notice and an opportunity respond. In response, Defendants argue that they carefully reviewed her appeal of the termination decision, thus affording her constitutionally sufficient process. Assuming that the employment contract is valid and created a property interest, Plaintiff cannot show that Defendants did not comply with the requirements of due process.

In *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972), the Supreme Court held that a liberty or property interest must exist to invoke Fourteenth Amendment protections. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of

interests that a person has already acquired in specific benefits." *Id.* at 576. Property interests are not created by the constitution. *Id.* Instead, "they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

In *Roth*, the plaintiff argued that he was deprived of a protected property interest when his employment was not extended past the length of his employment contract. *Id.* at 566. There was no guarantee of extended employment nor did the contract state that the employer had to give cause for non-extension. *Id.* at 566–67. In finding that the plaintiff's property interest only extended for the length of his contract, the Supreme Court reasoned that the terms of the plaintiff's property interest were defined by the terms of the contract. *Id.* at 578. Under its terms, the plaintiff had no guarantee of being rehired, the University-employer did not have any rule or policy that secured the plaintiff's interest past the contractual term, and no statute existed protecting plaintiff's claim to reemployment. *Id.*

Here, Plaintiff's property interest was clearly defined within the GA employment contract. Plaintiff's graduate assistantship was to continue for up to four years, subject to satisfactory performance, and governed by Louisiana Tech Policy 2310.[31] Defendants contend that it became clear to them that Plaintiff was not ready to begin teaching students after her presentation of her paper. Plaintiff, on the other hand, argues that she was terminated as a result of an email sent to professors and students after her presentation.

Following her GA termination, Plaintiff appealed the decision, and once it was upheld by Martin, Plaintiff further appealed to Guice. Other than conclusory statements, Plaintiff has offered no evidence to support her assertion that the appeals process was not followed or that Defendants were dishonest in their review. Moreover, Plaintiff had no guarantee of continued employment

---

[31] [Doc. No. 1-2, p. 22–23]

absent satisfactory job performance. Plaintiff cannot show that the termination of her graduate assistantship was for any reason other than inadequate performance or that it warranted more process than she received. Since Plaintiff cannot show that Defendants violated her Fourteenth Amendment procedural due process rights, her claim fails as a matter of law, and Defendants are entitled to summary judgment.

### 3. Conspiracy to Interfere with Civil Rights

Plaintiff next alleges that Defendants conspired to violate her First Amendment rights and are liable under 42 U.S.C. § 1985(3). In response, Defendants, citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), contend that a violation of civil rights under Section 1985(3) requires that Plaintiff allege that there "be some racial, class-based, invidiously discriminatory animus behind the conspirators' [actions]," which Plaintiff has failed to do. In *Griffin* the Supreme Court held that to sustain a cause of action under Section 1985(3) the plaintiff must allege that the defendant did:

> (1) conspire . . . (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of any privileges and immunities under the laws. [The plaintiff] must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of the conspiracy, whereby another was (4a) injured in his person or property or (4b) deprived of having and exercising any right or privilege of a citizen of the United States.

*Id.* at 102–03. (internal quotations omitted). The Supreme Court then reasoned that for the second element to be satisfied, there must be "some racial, or perhaps other class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102.

In the present case, Plaintiff contends that Defendants are wrong in their interpretation of Section 1985(3); however, as illustrated in *Breckenridge*, Defendants correctly stated that there must be an allegation of some race or class-based animus to satisfy the second element of the claim. Since Plaintiff has failed to allege, in her opposition or complaint, any race or class-based

14

animus, her conspiracy claim under Section 1985(3) fails as a matter of law, and Defendants are entitled to summary judgment.

### 4. Unlawful Retaliation

Plaintiff, throughout her complaint, generally asserts that Defendants engaged in retaliatory conduct. Defendants argue that Plaintiff is attempting to assert a claim for unlawful retaliation under Title VII. Title VII prohibits "discrimination in hiring or [terminating] an individual based on his race, color, religion, sex, or national origin." *Hall v. Cont'l Airlines, Inc.*, 252 Fed. App'x 650, 653 (5th Cir. 2007). Before asserting a Title VII claim, an individual must first exhaust administrative remedies, which occurs when the individual files an EEOC complaint, the complaint is dismissed, and the agency notifies the individual of their right to sue in federal court. *Id.*

In the instant case, Plaintiff concedes that she did not file an EEOC complaint and that the alleged discrimination was not based on race, sex, or national origin. Because Plaintiff cannot meet the requirements of a Title VII claim, this claim fails as a matter of law and must dismissed.

### 5. Deprivation of Equal Rights

Plaintiff next contends that Defendants deprived her of equal rights under the law and are liable under 42 U.S.C. § 1981. In response, Defendants argue that Plaintiff cannot satisfy the basic elements of a Section 1981 claim. "The analysis for claims under Section 1981 and Title VII is identical." *Id.* As in a Title VII claim, the plaintiff must first establish a *prima facie* case of discrimination by showing that "[she] is a member of a protected class, [she] was qualified for the position that [she] held before being fired, [she] was fired or suffered other adverse employment action," and other individuals, who are not a part of the protected class, were treated more favorably. *Id.* at 653–54.

15

As stated in the analysis of the unlawful retaliation claim, Plaintiff concedes that the actions taken by Defendants were not in response to her being within a protected class. Moreover, Plaintiff's sole argument is that Defendants fired her for exercising her First Amendment right of free speech. Since Plaintiff does not allege that Defendants fired her for being a part of a protected class, she cannot satisfy the elements of a Section 1981 claim, and the claim fails as a matter of law.

### 6. Other Statutes Cited by Plaintiff

Next, throughout her complaint, Plaintiff asserts that Defendants are generally liable under 42 U.S.C. §§ 2000c-8, 2000c-9, and 2000h-1. In response, Defendants allege that the statutes cited are inapplicable or do not create a cause of action for Plaintiff.

First, considering 42 U.S.C. § 2000c-8, the statute states, "nothing in this subchapter shall affect adversely the right of any person to sue for or obtain relief in any court against discrimination in public education." Title IV, which encompasses Section 2000c-8, does not provide a mechanism for private actions but instead authorizes suits by the Attorney General for the purpose of ending segregation in public education. *Regents of U. of California v. Bakke*, 438 U.S. 265, 382 (1978); 42 U.S.C. § 2000c-6. The Supreme Court has reasoned that Section 2000c-8 does not create a private action but instead preserves private actions so that they will not be adversely affected by public actions. *Id.* Since Section 2000c-8 does not create a private cause of action, Plaintiff's claims under this statute must be dismissed.

Next, Plaintiff alleges that Defendants are liable under 42 U.S.C. § 2000c-9. The statute states that "nothing in this subchapter shall prohibit classification and assignment for reasons other than race, color, religion, sex or national origin." 42 U.S.C. § 2000c-9. As stated above, Title IV was enacted for the purpose of ending segregation in public schools. *Bakke*, 438 U.S. at 382. By

16

its express language, Section 2000c-9 allows for assignment or classification based on categories other than race, color, religion, sex, or national origin. However, it does not create a private cause of action; Plaintiff's claims under this statute should therefore similarly be dismissed.

Finally, Plaintiff claims Defendants are liable under 42 U.S.C. § 2000h-1. Defendants contend that this statute is inapplicable here. 42 U.S.C. § 2000h-1 states, in part, "an acquittal or conviction in a prosecution for a specific crime under the laws of the United States shall bar a proceeding for criminal contempt, which is based upon the same act or omission, and which arises under the provisions of this Act." Again, this section does not create a separate cause of action for Plaintiff. All claims under this statute must be dismissed.

### 7. Breach of Contract

In her last argument, Plaintiff alleges that Defendants breached her employment contract by terminating her graduate assistantship. In response, Defendants argue, assuming a valid contract exists, that Plaintiff was validly terminated pursuant to the terms of the agreement. Under Louisiana law, "a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code Ann. Art. 1906. Contracts have the effect of law between the parties and only affect third persons when provided by law. La. Civ. Code Ann. Art. 1983; La. Civ. Code Ann. Art. 1985.

In the instant action, assuming the graduate assistantship letter created a valid contract, the contract existed between Louisiana Tech University and Plaintiff. Defendants did not sign the contract, and Plaintiff does not allege that Defendants were parties to the contract. Moreover, the contract also provided that unsatisfactory performance could result in the termination of Plaintiff's graduate assistantship.

Since Defendants were not parties to the contract and Plaintiff does not assert that Defendants were parties to the contract, she cannot sustain an action for breach of contract against them. Additionally, to the extent Defendants could be held liable for the terms of the contract, Defendants complied with the terms of the agreement when they fired Plaintiff upon finding her performance was unsatisfactory. Plaintiff's claims for breach of contract must be dismissed.

### III. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion for Summary Judgment [Doc. No. 31] is **GRANTED**, and Plaintiff's claims against Defendants are hereby **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 20th day of July, 2023.

_____
Terry A. Doughty
United States District Judge